IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUBEN FISCHMAN,<br><br>        Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA c/o<br>UNITED STATES ATTORNEY GENERAL,<br><br>        Defendant. | CIVIL ACTION<br>NO. 25-7131 |

<u>**OPINION**</u>

**Slomsky, J.**                                                                                      **June 3, 2026**

## I.      INTRODUCTION

Plaintiff Ruben Fischman was walking his dog through Washington Square Park, when he slipped due to mud on the walkway, fell, and sustained injuries.  (Doc. No. 1 ¶ 6.)  As a result, he brought a negligence claim against the United States under the Federal Tort Claims Act ("FTCA"), alleging in his Complaint that the United States, acting by and through the National Park Service ("NPS"), negligently failed to properly maintain, inspect, or control the Park's walkways and negligently failed to warn the Park's visitors of the dangers posed by the walkways.  (Id. ¶ 9.)

In turn, Defendant filed a Motion to Dismiss the Complaint pursuant to the Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  For the following reasons, Defendant's Motion to Dismiss will be granted.

## II.     BACKGROUND

### A.      Factual Background

According to the Complaint, Plaintiff alleges that on May 5, 2024 he suffered serious and permanent injuries when, while walking his dog in Washington Square Park, he slipped and fell

due to mud on the walkway.  (Doc. No. 1 at ¶¶ 6–7.)    Washington Square Park is part of Independence National Historic Park (the "Park"), and is operated by the NPS, a federal agency. (See Doc. No. 6-1 ¶ 1.)[1]

According to the Declaration of Steven Sims, the Park Superintendent, the Park "spans approximately 55 acres on twenty city blocks in Philadelphia," and contains more than 68 miles of walkways, including over 12 miles of sidewalks and paved trails, "nearly all of which are stone or brick." (Doc. No. 6-1 ¶¶ 4, 5.)  The Park's maintenance department consists of 68 staff-member positions, but the Park "is rarely at full staffing due to retirement, staff transfers, and the length of time it takes to fill vacant positions."  (Id. ¶ 6.)  Of the sixty-eight (68) staff-members, fifty (50) of them are "direct laborers" who work on "various maintenance requirements of the many buildings, grounds, and walkways within the Park."  (Id.)  Additionally, there are two masons whose responsibilities are to "observe and inspect Park facilities, including the brick and stone sidewalks and walkways, for hazards or other repair needs."  (Id. ¶ 8.)  "Park employees are instructed to report any observed conditions of note, including potential hazards, to the maintenance staff for further review and possible repair in a timely fashion."  (Id. ¶ 9.)

The Park's annual non-labor maintenance budget is approximately $710,000, and the Park's annual non-labor maintenance costs regularly exceed $1,000,000, requiring either additional funding or fund allocation. (Id. ¶ 6.)  In accordance with the 2006 NPS Management Policies, "the Park's maintenance plan and procedures must balance the interest of visitor safety

---

[1]  In considering a motion to dismiss based on a factual challenge to jurisdiction under Federal Rule of Civil Procedure 12(b)(1), as is the case here, the Court may consider evidence beyond the pleadings.  Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016); S.R.P. v. United States, 676 F.3d 329, 332 (3d Cir. 2012).

within the constraints imposed by the Park's congressionally mandated mission, NPS policy, and budget limitations." (Id. ¶ 10.)

### B.    Procedural Background

On December 17, 2025, Plaintiff filed the Complaint. (Doc. No. 1.) On February 27, 2026, Defendant filed a Motion to Dismiss. (Doc. No. 6.) On March 13, 2026, Plaintiff filed his Response in Opposition. (Doc. No. 9.) On March 27, 2026, Defendant filed its Reply. (Doc. No. 10.) The Motion to Dismiss is now ripe for disposition.

## III.    STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may present either a facial or a factual attack to the court's subject matter jurisdiction over the case. CNA v. United States, 535 F.3 132, 139 (3d Cir. 2008). A facial challenge contests the sufficiency of the complaint because of a defect on its face, such as lack of diversity among the parties or the absence of a federal question. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A factual attack, on the other hand, challenges the actual failure of the plaintiff's claims to "comport with the jurisdictional prerequisites." Pa. Shipbuilding, 473 F.3d at 514. If the 12(b)(1) motion makes a factual attack, the burden of proving subject matter jurisdiction is on the plaintiff. CNA, 535 F.3d at 139. When a court is confronted with a factual attack, "[it] is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and the plaintiff bears the burden of showing that jurisdiction does in fact exist. Mortensen, 549 F.2d at 891–92. A district court may consider evidence outside the pleadings. Gould Elecs. Inc., 220 F.3d at 176 (internal citation omitted). No presumption of truthfulness attaches to the plaintiff's allegations, such that the existence of disputed material facts does not preclude a court from evaluating the merits of jurisdictional claims. Mortensen, 549 F.2d at 891.

3

Here, the Government "presents a factual challenge to jurisdiction," (Doc. No. 6, n.1), so the Court is permitted to make factual findings on the question of jurisdiction. See CNA, 535 F.3d at 139. The Government seeks dismissal of Plaintiff's Complaint for lack of subject matter jurisdiction for two reasons: (1) the discretionary function exception to the Federal Tort Claims Act (FTCA) and (2) Pennsylvania's Recreational Use of Land and Water Act (RULWA) bar Plaintiff's Complaint.

### A.        Discretionary Function Exception to the Federal Tort Claims Act (FTCA)

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 474 (1994). Where the United States has no consented to be sued, federal courts lack subject matter jurisdiction to entertain suits against it. See id. at 475. In enacting the FTCA, Congress has waived the government's immunity for:

> claims…for money damages…for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

But there is an exception to the exception—namely, the "discretionary function" exception, which provides that the Government cannot be sued for any claim based upon "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The United States must show that the discretionary function exception applies. Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008) (citing Cestonaro v. United States, 211 F.3d 749, 756 n.5 (3d Cir. 2000)). The exception's purpose is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. S.A.

Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984).  "If the discretionary function exception applies, then the Court lacks subject matter jurisdiction and the case must be dismissed."  Whitaker v. United States, No. 19-4993, 2020 U.S. Dist. LEXIS 206883, at *4 (E.D. Pa. Nov. 5, 2020).

### B.    Pennsylvania's Recreational Use of Land and Water Act (RULWA)

The Third Circuit has made clear that RULWA applies to the United States in cases in which tort claims are brought against the United States since the liability of the United States under the FTCA is determined by applying the law of the State where the claim arose.  See Hahn v. United States, 493 F. Supp. 57, 59 (M.D. Pa.), aff'd 639 F.2d 773 (3d Cir. 1993).  As explained above, in enacting the FTCA, Congress waived the federal government's immunity from torts brought by private parties where a suit could be properly brought under state law.  See 28 U.S.C. § 1346(b)(1); see also Demolick v. United States, 593 F. Supp. 3d 165, 169 (M.D. Pa. Mar. 24, 2022), aff'd 2023 U.S. App. LEXIS 12307 (3d Cir. 2023) (granting Government's motion to dismiss for lack of subject matter jurisdiction where no exception to RULWA's protection from liability applied).  "RULWA provides that an owner of 'land' generally has no duty to warn or keep the premises safe for those invited to use the land for a 'recreational purpose[.]'"  Demolick v. United States, No. 22-1973, 2023 U.S. App. LEXIS 12307, at *5 (3d Cir. 2023).  RULWA does not apply where the landowner: (1) "willful[ly] or malicious[ly] fail[s] to guard against a dangerous condition"; or (2) charges a fee for use of the land.  See 68 P.S. §§ 477-1–8.  Therefore, if neither exception to RULWA applies, the Court lacks subject matter jurisdiction over Plaintiff's FTCA claim.  See Demolick, 2023 U.S. App. LEXIS 12307, at *8–9.

## IV.    ANALYSIS

As noted above, the Government focuses on two statutes in support of its Motion to Dismiss for lack of subject matter jurisdiction: (1) the discretionary function exception to the Federal Tort

Claims Act (FTCA); and (2) Pennsylvania's Recreational Use of Land and Water Act (RULWA).

The Court will address each argument, in turn, below.

### A.  The Discretionary Function Exception Immunizes the Government from Liability.

The Government argues that the discretionary function exception to the Federal Torts Claims

Act applies and, therefore, bars Plaintiff's Complaint. The United States Supreme Court

established a two-part test to determine whether the discretionary function applies in any particular

case.  United States v. Gaubert, 499 U.S. 315, 322–23 (1991).  First, a court must determine

whether the act giving rise to the alleged injury and thus the suit involves an element of judgment

or choice.  Id. at 322 (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). "The

requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy

specifically prescribes a course of action for an employee to follow, because the employee has no

rightful option but to adhere to the directive.  Id. (quotations omitted).  In this regard, the United

States Supreme Court has noted:

> [I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation. If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy. On the other hand, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.

Gaubert, 499 U.S. at 324.

Second, a court must determine "whether that judgment is of the kind that the discretionary

function exception was designed to shield."  Id. at 322–23 (quoting Berkovitz, 486 U.S. at 536.)

> Because the purpose of the exception is to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy.

Gaubert, 499 U.S. at 322–23 (internal quotation marks and citations omitted).  "The touchtone of the second step of the discretionary function test is susceptibility to policy analysis."  Cestonaro, 211 F.3d at 753.

### 1.      The Challenged Conduct Was Discretionary

The first part of the test requires the Court to consider whether the challenged conduct "involved an element of judgment or choice."  Gaubert, 499 U.S. at 322.  Here, the "challenged conduct is the [Government's] judgment regarding whether and how to maintain and inspect its brick walkways and whether to warn visitors about the risks associated with traveling over such walkways."  Levitt v. United States, No. 20-cv-5455, 2022 U.S. Dist. LEXIS, at *3 (E.D. Pa. Feb. 22, 2022).  The Government argues that the first element is met because the Park's decisions regarding inspection and maintenance of its sidewalks are "clearly and expressly left to the Park's discretion."  (Doc. No. 6 at 18.)  Although Plaintiff's Complaint does not point to any statute, regulation, or policy that restricts the Park's discretion, Plaintiff argues that only discovery could reveal whether the "[Government's] act or omissions involved specific and mandatory self-imposed obligations."  (Doc. No. 9 at 3.)

Various statutes, regulations, and internal policies give the NPS discretion on how to best maintain and inspect its parks and on whether and how to warn visitors of potential risks.  Under the NPS Organic Act, 16 U.S.C. § 1, the NPS is charged with:

> Promot[ing] and regulat[ing] the use of…national parks…by such means and measures as conform to the fundamental purpose of the said parks,… which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

"To implement this statutory directive, the [NPS] has adopted various policies and internal operating procedures, including those related to public safety."  S.R.P v. United States,

7

676 F.3d 329, 334–35 (3d Cir. 2012).  The NPS's 2006 Management Policies grant each park's

superintendent the discretion to address safety concerns and provides:

> The saving of a human life will take precedence over all other management
> actions as the Park Service strives to protect human life and provide for injury-
> free visits. The Service will do this within the constraints of the 1916 Organic Act.
> The primary—and very substantial—constraint imposed by the Organic Act is
> that discretionary management activities may be undertaken only to the extent
> that they will not impair park resources and values.

> While recognizing that there are limitations on its capability to totally eliminate
> all hazards, the Service…will seek to provide a safe and healthful environment for
> visitors and employees…

> ***

> These management policies do not impose park-specific visitor safety
> prescriptions. The means by which public safety concerns are to be addressed is
> left to the discretion of superintendents and other decision-makers at the park
> level who must work within the limits of funding and staffing. Examples include
> decisions about whether to install warning signs…

National Park Service, 2006 Management Policies, at ¶ 8.2.5.1 (2006).

Here, the policies require the Park "to strike a balance between" preservation of the

Park's historic nature and public safety, but they ultimately leave the decision on how to strike

that balance to the Superintendent's discretion.  Steven Sims, the Park's Superintendent, in his

Declaration states: "[t]here is no mandatory NPS regulation or policy that dictates how the Park

must accomplish the maintenance needs of the Park's sidewalks and walkways. Such actions are

discretionary and left to the judgment and choice of the relevant Park employees." (Doc. No. 6-1

¶ 7.)  Regarding these matters, the Third Circuit and other district courts within this Circuit have

consistently found these policies, or those similar, to "involve[] an element of judgment or

choice."  See S.R.P., 676 F.3d at 335–36 (holding that discretionary function applied where the

Government negligently failed to post barracuda warning sign for visitors);  Merando, 517 F.3d

at 162–172 (finding that discretionary function exception applied where the Government

negligently pruned and failed to remove a hazardous tree);  Levitt, 2022 U.S. Dist. LEXIS 30354, at *10–14 (concluding that the discretionary function exception applied where the plaintiff tripped on an uneven brick sidewalk);  Whitaker v. United States, No. 19-cv-4993, 2020 U.S. Dist. LEXIS 206883, at *10 (E.D. Pa. Nov. 5, 2020) (holding that the discretionary function exception barred claims alleging the United States failed to identify and mitigate against the risk posed by a crack in a trail because the maintenance policies did not "dictate a specific manner in which park officials should identify or respond to any safety concerns.").

Accordingly, the Government has shown that the Park's inspection and maintenance practice and decision not to post warning signage "involved an element of judgment or choice."

### 2.    The Challenged Conduct Is Susceptible to Policy Analysis

Turning to the second part of the test, the Court must determine whether the discretionary judgment afforded to NPS is "of the kind that the discretionary function exception was designed to shield."  Berkovitz, 486 U.S. at 536.  To meet this standard, there must be a "rational nexus between the Government's decision, and 'social, economic, and political concerns.'"  S.R.P, 676 F.3d at 336 (citations omitted).  The United States Supreme Court has held that "if a regulation allows employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgations of the regulations."  Gaubert, 499 U.S. at 324.

Here, the Government's challenged conduct is susceptible to policy analysis.  The Park Superintendent Sims states in his Declaration that the Park's masons "observe and inspect Park facilities, including the brick and stone sidewalks and walkways, for hazards or other repair needs."  (Doc. No. 6-1 ¶ 8.)  The Park's employees are also "instructed to report any observed conditions of note, including potential hazards, to the maintenance staff for further review and possible repair in a timely fashion."  (Id. ¶ 9.)  The manner in which inspection and maintenance

9

of the park walkways are performed requires the Park to "balance the interest of visitor safety within the constraints imposed by the Park's congressionally mandated missions, NPS policy, and budget limitations." (Doc. No. 6-1 ¶ 10.); see also Merando, 517 F.3d at 172 (finding that the challenged conduct was susceptible to policy analysis when the Park "had to consider how best to use its limited financial and human resources in a manner that balanced visitor safety with visitor enjoyment and conservation of the Park."). This balancing is "precisely the type of policy choice[s] that the discretionary function exception prohibits [the Court] from second-guessing." S.R.P., 676 F.3d at 337.

Because the Government also has shown that the challenged conduct involves policy analysis, and that both prongs of the discretionary function exception to the FTCA are met, this exception to the FTCA applies to the Government's maintenance of the walkways within Washington Square Park in this case. Thus, the Government is immune to suit based on the negligence claim asserted here and for this reason alone, the Court has no subject matter jurisdiction over this case.

### B. Pennsylvania's Recreational Use of Land and Water Act (RULWA) Bars Plaintiff's Complaint.

The Government also argues that Pennsylvania's RULWA bars Plaintiff's Complaint. As noted supra, RULWA does not apply where the landowner: (1) "willful[ly] or malicious[ly] fail[s] to guard against a dangerous condition"; or (2) charges a fee for use of the land. See 68 P.S. §§ 477-1–8.

Here, Plaintiff slipped and fell on a walkway while walking his dog in Washington Square Park. The Government argues that because Washington Square Park is open to the public free of charge and Plaintiff does not allege that he paid any fee to enter the park, he was a "recreational user," and his claim is precluded by RULWA. (Doc. No. 6 at 25.) Plaintiff argues to the contrary

10

that because Washington Square Park is an "improved facility with paved walkways", it is "not the type of land that RULWA was intended to protect." (Doc. No. 9 at 9.) In support of his position, Plaintiff cites cases which lack persuasive force because they pre-date the 2018 Amendment to RULWA that expanded the statute's definition of "land." (See id.)

The 2018 Amendment to RULWA defines "land" as:

> (1) "Land' means land, roads, water, watercourses, private ways and buildings, amenities, structures, boating access and launch ramps, bridges, fishing piers, boat docks, ramps, paths, paved or unpaved trails, hunting blinds and machinery or equipment when attached to the realty…

68 P.S. § 477-2(1). "From this definition is it apparent that raw land can include a structure or some type of improvement and still retain RULWA immunity." Lingua v. United States, 801 F. Supp. 2d 320, 322 (M.D. Pa. Jul. 22, 2011) (citations omitted).

Turning to the facts of the present case, the walkway upon which Plaintiff slipped and fell is clearly encompassed by RULWA's definition of "land." See Demolick, 593 F. Supp. 3d at 171, aff'd 2023 U.S. App. LEXIS 12307 (3d Cir. 2023) ("[W]hen the Pennsylvania legislature amended RULWA to include 'paths,' 'paved…trails,' and 'areas providing…parking for [] lands' it meant sidewalks…"). Therefore, under Pennsylvania law, the Government is immune from suit for this reason too. See 68 P.S. § 477-6.

V.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint (Doc. No. 6) will be granted because the Court does not have subject matter jurisdiction over Plaintiff's claim in this case. An appropriate Order follows.

11